NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0365n.06

Case No. 23-3771

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **FILED**<br>Aug 22, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff – Appellee | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| ANTHONY L. RICE, JR. | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant – Appellant | ) | |
| | ) | O P I N I O N |

Before: MOORE, COLE, and MATHIS, Circuit Judges.

COLE, Circuit Judge. In May 2023, Anthony Rice, Jr. pleaded guilty to one count of being a felon in possession of a firearm. The district court sentenced Rice to 46 months' imprisonment. Rice argues that the district court: (1) incorrectly concluded that his prior Ohio aggravated robbery conviction was a "crime of violence" under the Guidelines; (2) should have applied Amendment 821, which went into effect after Rice's sentencing, because it would have lowered his Guidelines range; and (3) failed to consider Rice's personal history as a mitigation factor. We **AFFIRM**, but because of an intervening Sentencing Guidelines amendment during the pendency of this appeal, we **REMAND** to the district court to consider whether Rice is entitled to a sentence reduction.

I.

A.

On April 27, 2022, a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) confidential informant (CI) bought a firearm for $1,100 from Rice during a controlled buy in

Cleveland, Ohio.  When sold, the firearm contained approximately 30 rounds of ammunition.  Rice also indicated that he had other firearms and "switches," devices that convert a semi-automatic handgun to fully automatic, available for purchase, but the CI did not purchase them.

Rice was prohibited from possessing a firearm because of a 2016 state conviction for an aggravated robbery, pursuant to Ohio Rev. Code § 2911.01(A)(1), that he committed when he was 16 years old.  Rice was released on parole from the aggravated robbery conviction on December 13, 2021.  Rice was still on parole at the time of the instant offense.  He was arrested for the instant offense on June 30, 2022, and he served 270 days in prison for the state parole violation.

B.

On March 23, 2023, Rice was indicted for one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On May 23, 2023, Rice pleaded guilty to the charged offense without a plea agreement.

In August 2023, Rice's final presentence report (PSR) recommended a base offense level of 22, pursuant to Guidelines § 2K2.1(a)(3), because the firearm was semi-automatic and could hold a large capacity magazine and because Rice had a previous conviction for a "crime of violence."  Rice argued that his previous conviction for aggravated robbery was not a "crime of violence" as defined by Guidelines § 4B1.2(a), and his base offense level should be 14.  Rice objected to a category III criminal history because Guidelines Amendment 821, which was going into effect in November 2023, no longer added criminal history points for being on parole at the time of the offense for offenders with less than seven criminal history points.  With this change, Rice alleged that his criminal history category would decrease to II.  As such, Rice concluded that his sentencing range should be 12–18 months.

Rice also argued that several mitigating factors should be taken into consideration in fashioning his sentence: exposure to violence at a young age, losing family and friends to gun violence, struggling in school, lack of employment, using marijuana at 14 years old, and that he was only 23 years old at the time of sentencing. Rice indicated that he was "amenable to treatment and mental health counseling" and planned to obtain his GED and commercial driver's license.

At the sentencing hearing, the district court overruled the first objection, explaining that (1) robbery is an enumerated "crime of violence" under the Guidelines, and (2) Ohio aggravated robbery meets the definition of extortion as a "crime of violence." It also overruled the second objection. Because the sentencing took place on September 6, 2023, prior to the Guidelines amendment going into effect on November 1, 2023, the district court concluded that it must apply the Guidelines in effect on the date of sentencing.

The district court reduced Rice's base offense level to 19 for acceptance of responsibility and placed him in criminal history category III. The Guidelines range was 37–46 months' imprisonment. The district court explained that it would entertain a motion for an upward variance for two reasons. First, in addition to illegally selling firearms, Rice had attempted to sell "switches" which can make firearms fully automatic. Second, Rice received 85 disobedience-related violations during his previous six-year term of incarceration for aggravated robbery. The government chose not to seek an upward variance.

The district court sentenced Rice to 46 months' imprisonment, to be served consecutively with his state sentence for the parole violation. The district court concluded that, collectively, Rice's history of violence, association with a street gang, and attempt to sell a firearm and a "switch" while on parole warranted a longer sentence despite his young age and violent upbringing. This appeal followed.

II.

Rice alleges that the district court: (1) erred in concluding that his 2016 Ohio aggravated robbery conviction was a "crime of violence" under the Guidelines; and (2) failed to apply Amendment 821, which went into effect after Rice's sentencing, because it would have resulted in a lower Guidelines range of 33–41 months' imprisonment.

A.

We review de novo the district court's determination that Rice's 2016 aggravated robbery conviction was a "crime of violence." *United States v. Ivy*, 93 F.4th 937, 941 (6th Cir. 2024). Under the Guidelines, the base offense level for a defendant with a felon-in-possession conviction is generally 14. *Id.* (citing U.S.S.G. § 2K2.1(a)(6)). But if the defendant committed the felon-in-possession offense after having been previously convicted "of either a crime of violence or a controlled substance offense" and the firearm at issue was a semiautomatic firearm capable of accepting a large capacity magazine, the base offense level is 22. U.S.S.G. § 2K2.1(a)(3).

Rice's base offense level was 22 because the firearm sold to the CI was a semi-automatic firearm "capable of accepting a large capacity magazine," and he sold the firearm after his 2016 Ohio conviction for aggravated robbery pursuant to § 2911.01(A)(1)—with the predicate offense of general theft per §§ 2913.01 and 2913.02. The district court concluded that the sentencing enhancement applied because Ohio aggravated robbery matches the definitions of Guidelines-enumerated robbery and extortion.

> At the time of Rice's sentencing, the Guidelines defined a "crime of violence" as:
>
> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

*Id.* § 4B1.2(a) (2021). This case turns on U.S.S.G. § 4B1.2(a)(2), or the enumerated-offenses clause.

Under the categorical approach, Rice's prior conviction matches an offense listed in the enumerated-offenses clause if its elements "are the same as, or narrower than, those of the generic offense" in the enumerated-offenses clause. *Descamps v. United States*, 570 U.S. 254, 257 (2013). We "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime," *id.*, rather than the facts supporting the defendant's prior conviction, *United States v. Butts*, 40 F.4th 766, 770 (6th Cir. 2022). The predicate conviction does not match an enumerated generic offense if that conviction "'covers any more conduct than the generic offense' . . . even if the defendant's actual conduct 'fits within the generic offense's boundaries.'" *Ivy*, 93 F.4th at 943 (quoting *Mathis v. United States*, 579 U.S. 500, 504 (2016)). "Thus, if the Ohio aggravated-robbery statute 'reaches conduct outside the scope of' the generic offense, such that a hypothetical defendant can receive a conviction under the statute without satisfying the elements of the offense identified in the Guidelines, then it 'does not constitute a crime of violence.'" *Id.* (quoting *United States v. Yates*, 866 F.3d 723, 734 (6th Cir. 2017)).

Because a hypothetical defendant could commit Ohio aggravated robbery in several different ways, we must first apply the modified categorical approach. *Id.* Specifically, Ohio's aggravated robbery statute contains alternative elements and is further subdivided by 31 possible predicate theft offenses. *United States v. Wilson*, 978 F.3d 990, 997 (6th Cir. 2020). In applying the modified categorical approach, we must determine which "alternative element" in the

aggravated robbery statute "formed the basis of the defendant's conviction," *see Descamps*, 570 U.S. at 278, by looking "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)," *Mathis*, 579 U.S. at 505. These are commonly referred to as *Shepard* documents. *Butts*, 40 F.4th at 771.

Rice's 2016 indictment describes the offense as follows:

[Rice] . . . did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Racardo L. Smith did have a deadly weapon, to wit: firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

Cuyahoga Cnty. Common Pleas Court, Case No. CR-16-604200-B, Indictment at 1. Next, Rice pleaded guilty to aggravated robbery pursuant to § 2911.01(A)(1), which reads:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it . . .

Ohio Rev. Code § 2911.01(A)(1). Ohio aggravated robbery "must be [further] predicated on the defendant's commission of a 'theft offense.'" *Wilson*, 978 F.3d at 998 (quoting *State v. Tench*, 123 N.E.3d 955, 1006–07 (Ohio 2018)). Ohio Rev. Code § 2913.01(K) defines 31 possible predicate theft offenses ranging from "robbery, burglary, and aggravated theft" to "less serious offenses, such as tampering with coin machines, safecracking, insurance fraud and workers compensation fraud." *Ivy*, 93 F.4th at 942 (citing §§ 2911.02, 2911.12(A), 2913.02(B)(2), 2911.31, 2911.32, 2913.47, and 2913.48)). Therefore, an "offender [ ] commits Ohio aggravated robbery by perpetrating any one of the predicate theft offenses while possessing and using a deadly weapon." *Id.*

"[I]f the *Shepard* documents in a particular case do not make clear under which subsection of the relevant statute a defendant was convicted, sentencing courts must 'presume that the conviction rested upon nothing more than the least of the acts criminalized.'" *United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (en banc) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)). Here, Rice's *Shepard* documents demonstrate Rice pleaded guilty to one count of aggravated robbery pursuant to § 2911.01(A)(1) based on "a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code."

Ohio Rev. Code § 2913.01 only lists the 31 possible predicate theft offenses for aggravated robbery. Section 2913.02 defines general theft:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> > (1) Without the consent of the owner or person authorized to give consent;
> > (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
> > (3) By deception;
> > (4) By threat;
> > (5) By intimidation.

Ohio Rev. Code § 2913.02(A); *State v. Rice*, 659 N.E.2d 826, 834 (Ohio Ct. App. 1995) (explaining that § 2913.02(A) sets forth the state's general theft provision). Because the 2016 indictment includes the narrower definition of general theft as the predicate theft offense, Rice's offense must have met the elements of general theft as defined in § 2913.02 for conviction under this predicate theft offense. Cuyahoga Cnty. Common Pleas Court, Case No. CR-16-604200-B, Indictment. Further, Rice conceded that he committed § 2913.02 theft by entering a guilty plea.

We must determine whether the elements of Rice's prior conviction for Ohio aggravated robbery pursuant to § 2911.01(A)(1) with a predicate theft offense of general theft, per § 2913.02, "are the same as, or narrower than" enumerated-offenses-clause robbery or extortion. *Descamps*, 570 U.S. at 257. In other words, can a hypothetical defendant be convicted of Ohio aggravated robbery with a general theft predicate offense without satisfying the elements of Guidelines enumerated robbery or extortion?

Finally, on November 1, 2023, new amendments to the Guidelines went into effect. 2023 Guidelines Manual Annotated, UNITED STATES SENTENCING COMMISSION (eff. Nov. 1, 2023). Under U.S.S.G. § 1B1.11(a), however, we apply the Guidelines that were in effect at the time of the defendant's original sentencing. In evaluating Rice's appeal, we must apply the 2021 Guidelines in effect at the time of Rice's sentencing in September 2023.

*Guidelines Extortion.* The elements of Ohio aggravated robbery, per § 2911.01(A)(1), with a predicate offense of general theft under § 2913.02(A), are the same as, or narrower than, the elements of Guidelines extortion. At the time of Rice's sentencing, the Guidelines defined extortion as "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. § 4B1.2 cmt. n.1 (2021).[1] While we have not yet addressed whether Rice's specific conviction is a match for Guidelines-enumerated extortion, our caselaw on related convictions proves instructive.

Where no predicate theft offense is identified in the defendant's *Shepard* documents, Ohio aggravated robbery with a deadly weapon, pursuant to § 2911.01(A)(1), is not a match for Guidelines extortion. *Ivy*, 93 F.4th at 947. This is because some of the "theft offenses" defined in

---

[1] The definition of extortion was unchanged by the November 2023 amendments but was moved from the commentary into the text of the Guidelines. *See* U.S.S.G. § 4B1.2(e)(2).

§ 2913.01(K) can be committed without the offender taking anything of value. *See* Ohio Rev. Code § 2911.12(B) (trespassing in a habitation when a person is present or likely to be present) and § 2911.13(B) (breaking and entering). Additionally, Ohio aggravated robbery has no mens rea requirement. *State v. Lester*, 916 N.E.2d 1038, 1044 (Ohio 2009). Rice's *Shepard* documents specify the predicate theft offense for his aggravated robbery conviction, however, and that theft offense provides the necessary elements to match Guidelines extortion.

In *United States v. Carter*, we held that Ohio robbery pursuant to § 2911.02(A)(2) was a match for Guidelines extortion even though Carter's *Shepard* documents did not specify a predicate theft offense because Ohio robbery with a predicate offense of general theft was not broader than the "obtaining" element of Guidelines extortion. 69 F.4th 361, 364–65 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 612 (2024). Ohio robbery provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall . . . [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Ohio Rev. Code § 2911.02(A)(2). Citing Ohio general theft pursuant to § 2913.02, the *Carter* court explained that theft, or attempted theft, is narrower than the corresponding first element of Guidelines extortion— "obtaining something of value from another"—because § 2913.02(A)'s theft definition requires an individual to "obtain or exert control over . . . property or services." *Carter*, 69 F.4th at 364. The *Carter* court also concluded that attempted Ohio robbery was a match for Guidelines extortion because enumerated crimes of violence "include[] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* at 364 (citing U.S.S.G. § 4B1.2 cmt. n.1 (2021)).[2]

---

[2] We asked the parties to discuss at oral argument whether *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), was applicable to this case. (ECF No. 28.) Because *Havis* was not briefed by either party and defense counsel effectively did not argue the matter at oral argument, the argument is forfeited, and we decline to address it here. *United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021) (explaining that forfeiture is the "failure to make a timely assertion" of an argument or claim). We therefore assume without deciding that *Carter* is not in conflict with

Ohio robbery's second element requiring an individual to "[i]nflict, attempt to inflict, or threaten to inflict physical harm," *see* Ohio Rev. Code § 2911.02(A)(2), is the same as the Guidelines extortion element requiring the wrongful use of "force, fear of physical injury, or threat of physical injury." *Carter*, 69 F.4th at 364 (citing U.S.S.G. § 4B1.2 cmt. n.1 (2021) (cleaned up)). Next, the *Carter* court reasoned that Guidelines extortion does not specify whether the harm committed must be inflicted on another person or whether the harm must occur during or immediately after the offense. *Id.* Regardless, the court explained that because Ohio robbery required the harm to be inflicted on a person and for it to occur during the theft or while fleeing immediately after, it circumscribed the same or less conduct than Guidelines extortion. *Id.*

Although *Carter* dealt with the Ohio robbery statute, not the Ohio aggravated robbery statute at issue here, its holding is relevant. Ohio robbery, pursuant to § 2911.02(A)(2), is a lesser included offense of Ohio aggravated robbery, pursuant to § 2911.01(A)(1). *State v. Evans*, 911 N.E.2d 889, 895 (Ohio 2009). In other words, to be convicted of Ohio aggravated robbery, one must also meet each element of Ohio robbery. *Id.* at 894–95.

Therefore, because: (1) Ohio robbery with a predicate theft offense as defined in § 2913.02(A) is a Guidelines match for extortion; (2) Ohio robbery is a lesser included offense of Ohio aggravated robbery; and (3) Ohio aggravated robbery circumscribes less conduct than Ohio robbery, because it requires the offender to display, brandish, use, or indicate possession of a weapon during the offense, Ohio aggravated robbery with general theft, as defined in § 2913.02, as the predicate theft offense is a Guidelines match for extortion. In other words, Rice could not be convicted of Ohio aggravated robbery with a predicate offense of general theft without also

---

*Havis* and rely on the Guidelines commentary definition of crime of violence that includes inchoate crimes. *Cf. Ivy*, 93 F.4th at 946 n.2.

meeting the elements of Guidelines extortion. *Moncrieffe*, 569 U.S. at 190 (holding that a "state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily involved . . . facts equating to [the] generic [federal offense]'") (internal citations and quotations omitted and alterations in original).

In conclusion, Rice's prior conviction is a match for Guidelines enumerated extortion and a crime of violence for Guidelines sentencing purposes.[3]  Because Rice's conviction for Ohio aggravated robbery is a match for Guidelines extortion, the district court did not err in applying the sentencing enhancement.

B.

Effective November 1, 2023, the United States Sentencing Commission retroactively amended § 4A1.1 of the Guidelines to eliminate the provision requiring the addition of two criminal history "status points" for a defendant who commits the instant offense while on parole, when that defendant has less than seven criminal history points.  Sentencing Guidelines App. C Supp., Amend. 821 (Nov. 1, 2023); U.S.S.G. § 4A1.1(e) (2023).  The district court "properly imposed [Rice's current sentence] based on the guidelines in effect at the time of sentencing." *United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997) (citing 18 U.S.C. § 3553(a)(4)(A)).  Because the parties essentially dispute whether the district court based its sentencing determination on a "sentencing range that was subsequently lowered by the Sentencing Commission," this raises "a matter of statutory interpretation that we review *de novo*." *United States v. Jackson*, 678 F.3d 442, 444 (6th Cir. 2012).

---

[3] Because Rice's aggravated robbery conviction is a match for Guidelines extortion, we need not consider whether it is also a match for Guidelines robbery.

If an amendment is retroactive, *see Hughes v. United States*, 584 U.S. 675, 681 (2018), a court may reduce a sentence already imposed:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o*) . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable.

18 U.S.C. § 3582(c)(2). "A defendant is eligible for a sentence reduction only if the amendment has 'the effect of lowering the defendant's applicable guideline range' when the court substitutes the amendment for the corresponding guideline provision that was applied when the defendant was sentenced, leaving 'all other guideline application decisions unaffected.'" *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012) (quoting U.S.S.G. § 1B1.10(a)(2)(B)). The amendment must also be incorporated into the Guidelines policy statement at § 1B1.10 before a district court can reduce a sentence. *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013).

The Sentencing Commission incorporated Amendment 821 to § 4A1.1, at issue here, into its policy statement. U.S.S.G. § 1B1.10(d) (2023). This amendment took effect on February 1, 2024, and was specifically made retroactive. U.S.S.G. § 1B1.10(e)(2), cmt. n.7. Further, the pre-amendment Guidelines which created "status points" were "clearly 'a relevant part of the analytical framework' used by the district court to determine [Rice's] sentence." *Jackson*, 678 F.3d at 445 (citing *Freeman v. United States*, 564 U.S. 522, 530 (2011)). Rice received two additional points for committing the instant offense while on parole, pursuant to then Guidelines § 4A1.1, resulting in a criminal history score of five and placing him in criminal history category III. The district court specifically addressed and rejected Rice's objection to the calculation of his criminal history category of III because the Guidelines amendment had not gone into effect at the time of sentencing.

When an amendment to the Guidelines applies retroactively, the proper procedure is "for this court to affirm the sentence but to remand for consideration of whether the prisoner is entitled to a sentence reduction under § 3582(c)(2)." *United States v. Poole*, 538 F.3d 644, 646 (6th Cir. 2008); *United States v. Ralston*, ___ F.4th___, 2024 WL 3755662, at *11 (Aug. 12, 2024). Therefore, we remand with instruction for the district court to address Rice's outstanding 18 U.S.C. § 3582(c)(2) motion for sentence reduction. *See* Mot. for Sentence Reduction, R. 33.

### III.

Finally, Rice argues that his sentence is substantively unreasonable because the district court failed to consider certain mitigating factors, such as his personal history and that he took responsibility by pleading guilty. We review a challenge to the substantive reasonableness of a sentence for abuse of discretion. *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020).

"We presume a within-Guidelines sentence is substantively reasonable. But a defendant can rebut this presumption if a district court chose a sentence arbitrarily, ignored pertinent § 3[5]53(a) factors, or gave unreasonable weight to any single factor." *United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022) (internal citation omitted). We assess "whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in [] § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). Our review is deferential, but we consider the totality of the circumstances. *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020).

When fashioning an appropriate sentence, the district court considers certain factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the seriousness of the offense; (4) the need for adequate deterrence; (5) the need to protect the

public from further crimes by the defendant; (5) the need to provide the defendant with educational or vocational training; and (6) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). Not every § 3553(a) factor is important in every sentencing. *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). "[O]ften one or two prevail." *Id.*

The district court provided ample explanation for its decision. Even though Rice was only 23 years old at sentencing, the district court stated that the nature, seriousness, and circumstances of the offense were concerning because it occurred while Rice was on parole for a previous criminal conviction and it involved not just the use, but the sale, of guns. While the district court acknowledged that the average sentence for this offense was 35-months with a median of 37-months, it explained that Rice's Guidelines range was higher due to his prior conviction for aggravated robbery. The court concluded that Rice posed a danger to the public because of the gun sale and risked receiving a substantially longer sentence under the "armed career criminal" provisions of the Guidelines if his conduct continued.

It also detailed Rice's history and characteristics including the many mitigating factors that impacted Rice's childhood such as his early exposure to guns, violence, loss of loved ones to gun violence, and drugs. The district court explained that Rice's mitigating factors were the basis for which the district court chose not to enact a sentence above the calculated Guidelines range.

We are not left with the definite and firm conviction that the district court committed a clear error of judgment. *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016). Rather, the district court analyzed each § 3553(a) factor when fashioning Rice's sentence without giving unreasonable weight to any one factor. Rice's argument "boils down to an assertion that the district court should have balanced the § 3553(a) factors differently, which is simply beyond the scope of

this court's appellate review." *United States v. Frei*, 995 F.3d 561, 567–68 (6th Cir. 2021) (citations and internal quotations omitted).  Therefore, Rice's sentence is substantively reasonable.

IV.

For the reasons set forth above, we **AFFIRM** the judgment of the district court, but we **REMAND** the case to the district court to consider whether Rice is entitled to a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).